IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

MAY 0 1 1998

Michael N. Milby, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| v. § | CIVIL ACTION NO. C-97-83 |
| § | |
| 155.465 ACRES OF LAND, MORE OR § | |
| LESS, IN SAN PATRICIO COUNTY § | |
| AND NUECES COUNTY, TEXAS; § | |
| MARIE WELDER FORD, ET AL. § | |

### PLAINTIFF'S PROPOSED JURY INSTRUCTIONS AND SPECIAL INTERROGATORIES

TO THE HONORABLE ADRIAN G. DUPLANTIER, UNITED STATES DISTRICT JUDGE:

The United States of America, plaintiff, respectfully respectfully requests that the Court use the following jury instructions and special interrogatories:

### PRELIMINARY INSTRUCTIONS

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As I mentioned to you while we were selecting the jury, this suit is brought by the United States in the exercise of its power of eminent domain and is called a condemnation proceeding.

The Navy determined that it needed to acquire a portion of the defendants' land for the construction of what is called an "Electromagnetic Roll Facility". This facility will consist of a pier and related improvements that will be used to correct the buildup of magnetism in the Navy's minesweepers.

1

The Federal Government has the right and the power to take private property for public purposes. That power is essential to the Government's independence. If the Government did not have the power to take private property, any landowner could delay or even prevent public improvements, or could force the Government to pay a price that exceeds the fair market value of the property taken.

However, the exercise of the power of eminent domain is subject to the requirement that the United States must pay just compensation to the owner for what it takes.

As the jury you will decide the amount of compensation that the Navy must pay for the taking of the defendants' land. As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

In most cases, the plaintiff makes the first opening statement and presents the first witnesses. However, this case is different. The defendants have the burden to prove the amount of compensation that they are entitled to receive. So, they are being allowed to make an opening statement, call witnesses and present their evidence first. After they have presented their evidence, the Government will have an opportunity to call witnesses and present

2

evidence. After each side has presented their direct case, the parties will be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions. Pay close attention to the testimony and evidence.

If you would like to take notes during the trial, you may do so. If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony. Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes. If you do not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.

Even though the testimony in this case is being electronically recorded, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits will be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other jurors until all of the

jurors are in the jury room actually deliberating at the end of the case. If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case -- the parties, the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not attempt to learn anything about the case from any other source. You are to be guided solely by what you see and hear in this trial.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial. It is now time for the opening statements.

### GENERAL INSTRUCTIONS FOR CHARGE

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will instruct you on the law that you must apply in rendering your verdict. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the ones who will consider the evidence and determine the amount of compensation the Navy must pay for the taking of the defendants' land. The law that you must apply is stated in the following paragraphs.

## Power of Eminent Domain

This suit is brought by the United States in the exercise of its power of eminent domain. The Government has the right and the power to take private property for public purposes. That power is essential to the Government's independence. If the Government did not have the power to take private property, any landowner could delay or even prevent public improvements, or could force the Government to pay a price that exceeds the fair market value of the property taken.

The exercise of the power of eminent domain is subject to the requirement that the United States must pay just compensation to the owner for all property taken.

## Date of Taking - Interest

The taking of the property occurred when the United States filed this suit on February 11, 1997. So, your determination of compensation should be based upon the value of the property and the circumstances existing on that date.

The judgment I will enter upon your verdict will provide that the United States will pay interest to compensate the defendants for any delay in payment after the date of taking. Therefore, you should not consider any delay in payment and you should not include any interest, or other compensation for the delay, in your verdict.

## Description of Land Taken

The land and interests taken by the United is described as follows:

    Tract I    105.477 acres of submerged land in Corpus Christi Bay in Nueces County, Texas

```
Tract II      46.349 acres of upland adjoining Corpus Christi
              Bay in San Patricio County, Texas

Tract III     3.639 acres of land in San Patricio County, Texas
              (the access easement)
```

The estate taken in Tracts I and II is the fee simple title, excluding all oil, gas and other minerals.

The estate taken in Tract III is a perpetual easement to construct, operate, maintain, and repair a roadway and utility lines across it. The defendants continue to own the fee simple title to Tract III and may use the road constructed by the United States to access the remaining portions of their property. They also have the right to relocate the easement by building a replacement roadway and utility lines at their expense.

The United States did not take any of the mineral rights and the owners of the mineral interests still have the right to enter the property for the purposes of exploring for and producing oil and gas. Therefore, you should not include the value of any oil and gas deposits in your verdict.

### Fair Market Value

The phrase "fair market value" means the amount a willing buyer would have paid a willing seller in an arms-length transaction, when both parties are fully informed about all of the advantages and disadvantages of the property, and neither is acting under any compulsion to buy or sell.

Fair market value must be determined by considering the property's highest and most profitable use, in the open market with a reasonable time allowed to find a purchaser.

6

The Navy selected the dimensions and location of the property that it needed for the EMR Facility. The defendants may have preferred a different location or configuration. However, since the standard for determining fair market value is based on what a willing buyer would pay a willing seller, in reaching your verdict you must assume that the defendants were willing sellers of the access easement and land taken by the United States.

### Pre-Existing Navigational Servitude

The Constitution gives the United States a dominant servitude over navigable waters and the land submerged beneath them. This dominant right is called the "navigational servitude". It extends to all lands below the ordinary high water mark, not just the channels used by ships. It gives the United States the superior right to use all navigable waterways for the purposes of commerce, navigation, conservation, flood control, and national defense.

The navigational servitude allows the United States to dredge or fill any submerged lands or to prohibit any persons, including the owners of those lands, from dredging or filling them, or building piers or improvements on them, without being obligated to pay the compensation to the owners. [Zabel v. Tabb, 430 F.2d 199 (5th Cir. 1970)]

It also allows the United States to build a pier upon any submerged land and use it for the mooring of naval vessels without the payment of compensation to the owner of the submerged land, even if the construction of a pier has the effect of blocking the owner's access to the navigable waters. [Scranton v. Wheeler, 179

7

U.S. 141 (1900); <u>United States v. Commodore Park</u>, 324 U.S. 386, 391 (1945)]

The defendants' submerged land has always been burdened by the superior rights of the United States as the owner of the navigation servitude.

Also, although the defendants owned the title to the 105.477 acres of submerged land described as Tract I, they could not fence it off or prevent other members of the public from using it for boating, fishing, and navigation without the consent of the United States. [<u>Silver Springs Paradise Co. v. Ray</u>, 50 F.2d 356, 358-359 (5th Cir. 1931)]

### Burden of Proof

The burden is on the defendants as owners to prove the fair market value of their property by a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you.

If you decide that the defendants' evidence does not support their valuation, you may award a lesser amount that you feel is supported by a preponderance of the evidence.

### Valuation of the Upland Tract

The 46.349 acre tract designated as Tract II is not burdened by the navigational servitude because it is located above the ordinary high water mark. Therefore, in reaching your verdict, you should determine the fair market value of Tract II based upon all uses to which it could reasonably be put, including its highest and best use, which use may be dependent upon access to or use of

8

navigable waters. In other words, you may consider its suitability for use as an industrial facility and/or port site in determining its value. Also, in determining the fair market value of Tract II you may consider the fact that the defendants owned the adjoining submerged land.

### Valuation of the Submerged Tract

The 105.477 acre tract designated as Tract I is burdened by the navigational servitude because it is located below the ordinary high water mark. As owners of this submerged land, the defendants had the right to apply for a permit to build a pier on it or to dredge or fill it. However, the value attributable to this right is not assertable against the pre-existing superior rights of the United States and is not a compensable element of value in this suit. [Rands, 389 U.S. at 126.] Therefore, in reaching your verdict, you should determine the fair market value of Tract I by excluding any value that it may have for use as a port site, for mooring barges, or for any use that requires dredging or filling it. In other words, for the purposes of valuing Tract I, it makes no difference whether the Corps of Engineers would have issued a permit to build a pier or allowed the defendants to dredge or fill it. You must value Tract I as though no such permit could be obtained. [Rands, 389 U.S. at 125; Twin City, 350 U.S. at 228; U.S. v. 8.968.06 Acres, 318 F.Supp. 698, 703 (S.D. Tex. 1970)]

### Damages to the Remainder

The taking of Tracts I, II and III left the defendants with 1,078.761 acres of land. In addition to the compensation for the

9

taking of Tracts I, II and III, the defendants are entitled to receive compensation for the diminution in value, if any, of their remaining 1,078.761 acres resulting from the taking of part of their land. But, they are not entitled to recover any compensation for damages to their remaining land resulting from loss or reduction of access from their remaining land to the La Quinta or Jewell Fulton Channels.

### Other Instructions

After I have finished instructing you on the law, the attorneys will have an opportunity to make their closing arguments.

Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

You must answer each question from the evidence before you. In answering each question, you may [unless otherwise instructed] consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

10

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.

Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

When you retire to the jury room to deliberate, you may take with you this charge and the exhibits that the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial.

11

Your answers to each of the interrogatories must be unanimous. After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and sign and date the verdict form. Return this charge together with your written answers to the questions. Unless I direct you otherwise, do not reveal your answers until such time as you are discharged. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

You may now retire to the jury room to conduct your deliberations.

## REQUESTED VERDICT FORM

The plaintiff requests that the value of the uplands and the submerged land be submitted to the jury using separate interrogatories as follows:

<u>Interrogatory No. 1</u>: State the fair market value of the 3.639 acre access easement designated as Tract III.

<u>Interrogatory No. 2</u>: State the fair market value of the 46.349 acres of upland property designated as Tract II, including

12

any value that it may have arising from its suitability for use as a port site and/or industrial facility.

<u>Interrogatory No. 3</u>: State the fair market value of the 105.477 acres of submerged land designated as Tract I, excluding any value that it may have for use as a port site, for mooring barges, or for any use that requires dredging or filling it.

<u>Interrogatory No. 4</u>: State the amount of damages, if any, to the fair market value of the defendants' remaining 1,078.761 acres of land caused by the taking of Tracts I, II and III, excluding any damages that may result from loss of or reduction of access from such remaining land to the La Quinta or Jewell Fulton Channels.

<u>FIRST ALTERNATIVE VERDICT FORM</u>

Pursuant to the Court's April 24, 1998 instructions and without waiving its request that the case be submitted as set forth above, the plaintiff submits the following alternative proposed verdict form:

<u>Interrogatory No. 1</u>: [Same as above Interrogatory No. 1].

<u>Interrogatory No. 2</u>: State the combined fair market value of (1) Tract II (46.349 acres of upland property), including any value it may have arising from its suitability for use as a port site or industrial facility, and (2) Tract I (105.477 acres of submerged land), excluding any value that it may have for use as a port site, for mooring barges, or for any use that requires dredging or filling).

<u>Interrogatory No. 3</u>: [Same as above Interrogatory No. 4].

13

Respectfully submitted,

JAMES H. DeATLEY
United States Attorney

By: *Charles Wendlandt*
CHARLES WENDLANDT
Assistant United States Attorney
Admissions I.D. Number: 12172
State Bar I.D. Number: 21171500
Wilson Plaza, Suite 1400
606 No. Carancahua
Corpus Christi, Texas  78476
(512) 888-3111

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was hand-delivered to Rick Rogers on May 1, 1998.

*Charles Wendlandt*
CHARLES WENDLANDT

14

ClibPDF - www.fastio.com